FILED

2020 Sep-21  AM 10:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **VYTAUTAS PUKIS, M.D. AND BLOSSOMWOOD MEDICAL, P.C.,** | ) ) ) ) | |
| **Plaintiffs,** | ) | Civil Action Number |
| **v.** | ) | **5:19-CV-00232-AKK** |
| | ) | |
| **CENTERS FOR MEDICARE AND MEDICAID SERVICES, et. al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION

Vytautas Pukis, M.D. and Blossomwood Medical, P.C. were enrolled as Medicare suppliers[1] who provided healthcare to Medicare patients. Doc. 15-3 at 14. On June 14, 2017, the Centers for Medicare and Medicaid Services ("CMS") informed Dr. Pukis and Blossomwood that 1) it intended to revoke their Medicare billing privileges effective July 14, 2017 and 2) it would ban them from re-enrolling as Medicare suppliers for three years. Docs. 15-55 at 27-28; 15-62 at 8-9. CMS found Dr. Pukis and Blossomwood had violated 42 C.F.R. § 424.535(a)(8)(i) by billing "for services rendered to one hundred eight (108) beneficiaries by Dr. Pukis

---

[1] The Medicare statute defines doctors and medical practices as "suppliers." *See* 42 U.S.C. § 1395x(d) (defining supplier); *see also* 42 U.S.C. § 1395x(u) (defining 'provider of services').

for periods of time when he was out of the country." Docs. 15-55 at 27; 15-62 at 8. Dr. Pukis and Blossomwood exhausted the administrative appeals process which culminated in the Department of Health and Human Services Departmental Appeal Board ("DAB") upholding the revocation. Doc. 15-3 at 13. Dr. Pukis and Blossomwood now present claims to this court that the revocation of their Medicare billing privileges and the imposition of the three-year re-enrollment bar violated the Administrative Procedures Act, the Medicare Act, and the United States Constitution. The court has for consideration the parties' respective motions for judgment on the administrative record, docs. 23 and 26. For the reasons that follow, the Defendants' motion is due to be granted.

## I.

The Defendants take issue with the Plaintiffs' challenge under the Administrative Procedure Act, contending that it does not apply in situations where, as here, the Medicare Act governs. Docs. 26 at 8, n.3. There is conflicting caselaw precedent on this issue.[2] Further, these two laws impose slightly different standards of review. The court does not have to resolve this conflict, because regardless of whether one or both laws apply, the DAB Final Decision is due to be affirmed.

---

[2] *Compare Gulfcoast Med. Supply, Inc. v. Sec'y, Dept. of Health & Human Servs.,* 468 F.3d 1347, 1350, n.3 (11th Cir. 2006) (applying the standard outlined in the Social Security Act, 42 U.S.C. § 405(g)) *with Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius,* 614 F.3d 1276, 1280 (11th Cir. 2010) (applying the standard outlined in the Administrative Procedure Act).

## A.

When reviewing a claim for a violation of the Medicare Act, 42 U.S.C. § 1395ff(b)(1)(A), the court may only ask "whether there is substantial evidence to support the findings of the . . . [Secretary], and whether the correct legal standards were applied." *Gulfcoast Med. Supply,* 468 F.3d at 1350, n.3 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002)). Similarly, for a claim sounding in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (E), the court "must abide by [the Secretary's final decision] 'unless [it was] arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence in the record taken as a whole.'" *Fla Med. Ctr of Clearwater, Inc.,* 614 F.3d at 1280 (quoting *Alacare Home Health Servs., Inc. v. Sullivan*, 891 F.2d 850, 854 (11th Cir. 1990)). Under both standards, the court reviews whether the DAB applied the law correctly. 5 U.S.C. § 706(2)(A-C); 42 U.S.C. 405(g) (incorporated by 42 U.S.C. § 1395ff(b)(1)(A)). The court also determines if the substantial evidence supports the DAB's factual findings. 5 U.S.C. § 706(2)(E); 42 U.S.C. 405(g) (incorporated by 42 U.S.C. § 1395ff(b)(1)(A)). For a claim brought pursuant to the Medicare Act, the review ends there. But, for an APA claim, the court further asks whether the actions of the DAB were "arbitrary, capricious, or an abuse of discretion." 5 U.S.C. § 706(2)(A).

**B.**

Dr. Pukis and Blossomwood contend the DAB "missaplied" the legal standard to revoke their billing privileges.  Doc. 23 at 8, 21.  Essentially, they assert the DAB should have considered the "material facts relating to the significance, materiality, or relative weight and importance of the alleged billing errors in either absolute terms or in comparison to overall billing volume and practices of the Plaintiffs."  *Id.* at 8. And they argue also that the DAB erred by not applying the factors under 42 C.F.R. § 424.535(a)(8)(ii).[3]  *Id.* at 32.  Therefore, the court must review initially whether the DAB applied the proper legal standard.  5 U.S.C. § 706(2)(A-C); 42 U.S.C. 405(g) (incorporated by 42 U.S.C. § 1395ff(b)(1)(A)).

**i.**

The DAB refused to consider facts that Dr. Pukis and Blossomwood contend mitigated their billing violations and are relevant under 42 C.F.R. § 424.535(a)(8)(i). Doc. 15-3 at 17-19, 22-23.  Instead, the DAB relied solely on Dr. Pukis's and Blossomwood's submission of over 100 impossible claims to render its decision. Doc. 15-3 at 21.  Dr. Pukis and Blossomwood argue this failure to consider other potentially mitigating factors is a misapplication of the law.  Doc. 23 at 8, 25-28. The court disagrees.

---

[3] Dr. Pukis and Blossomwood do not assert that regulation cited to impose the three-year enrollment bar was incorrect, so the court will not address that issue.  *See* doc. 27 at 12 (noting 42 C.F.R. § 434.535(c) applied to the case at hand).

4

Section 424.535(a)(8)(i) provides CMS with the authority to "revoke a currently enrolled provider or supplier's Medicare billing privileges" if the supplier "submits a claim or claims for services that could not have been furnished to a specific individual on the date of service."   42 C.F.R. § 424.535(a)(8)(i)(2015).   The regulation specifically allows for termination of a supplier's enrollment when "[t]he directing physician or beneficiary is not in the state or country when services are furnished."   *Id.* at § 424.535(a)(8)(i)(B) (2015).

In deciding that Dr. Pukis and Blossomwood violated this rule, the Administrative Law Judge (the "ALJ") interpreted the rule to require "'at least three' claims that could not have been provided."   Doc. 15-3 at 10 (quoting 73 Fed. Reg. 36,448, 36,455).   The DAB reiterated this interpretation and affirmed the ALJ's analysis.   Doc. 15-3 at 18, 21.   Both the DAB and the ALJ relied on CMS's response to a public comment in the Federal Register explaining, "we will not revoke billing privileges under § 424.535(a)(8) unless there are multiple instances, at least three, where abusive billing practices have taken place."   73 Fed. Reg. 36,455; Doc. 15-3 at 10 (ALJ Decision); Doc. 15-3 at 18 (DAB Final Decision).

An agency's interpretation of its regulation will control as long as it is not "plainly erroneous or inconsistent with the regulation."   *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotations omitted).   By its plain language, Section 424.535(a)(8) allows CMS to revoke a supplier's billing privileges if they billed for

services that "could not have been furnished . . . " 42 C.F.R. § 424.535(a)(8)(i)(B)
(2015). And, the DAB's interpretation of this regulation to require at least three
impossible claims for services is consistent with the regulation. Dr. Pukis and
Blossomwood are certainly correct that the DAB failed to consider the other facts
they presented and deemed them instead as being outside the scope of its review.
*See* doc. 15-3 at 8, 25-28. However, while strict and perhaps harsh, this
interpretation is not "plainly erroneous or inconsistent with the regulation." *Auer*,
519 U.S. at 461.

### ii.

Dr. Pukis and Blossomwood also contend that the DAB erred because it "did not
apply" the factors listed in 42 C.F.R. § 424.535(a)(8)(ii). Doc. 23 at 32-33. Section
424.535(a) lists the "[r]easons for revo[king]" a supplier's Medicare enrollment. 42
C.F.R. § 424.535(a)(2015). Subsection (a)(8) provides for revocation when a
supplier has "[a]bused [their] billing privileges." 42 C.F.R. § 424.535(a)(8)(2015).
This is defined to include two situations,[4] and the DAB relied on the first of these
two: when "[t]he provider or supplier submits a claim or claims for services that
could not have been furnished to a specific individual on the date of service." *Id.* at
§ 424.535(a)(8)(i)(2015). Dr. Pukis and Blossomwood contend that the DAB should

---

[4] *See* 42 C.F.R. § 424.535(a)(8)(2015) ("Abuse of billing privileges includes either of the
following:").

have relied instead on the second situation, *i.e.* when "CMS determines that the provider or supplier has a pattern or practice of submitting claims that fail to meet Medicare requirements."   *Id.* at § 424.535(a)(8)(ii) (2015); doc. 23 at 32. Presumably, Dr. Pukis and Blossomwood believe they would prevail under this standard.  Even if true, the regulation allows the DAB to proceed on either sceniaro. Here, CMS revoked Dr. Pukis's and Blossomwood's Medicare enrollment under Section 424.535(a)(8)(i) because they submitted over 100 impossible claims—in particular, claims for services at a time when Dr. Pukis was not in the country and could not have provided the alleged services.  Docs. 15-55 at 27-28; 15-62 at 8-9. The revocation was not based on Section 424.535(a)(8)(ii), so CMS had no obligation to consider whether there was "a pattern or practice" of abusive billing.

## C.

In light of the court's finding that the DAB applied the law correctly, the court moves to the next step of the analysis and considers whether the substantial evidence supports the DAB's factual findings.[5]  5 U.S.C. § 706(2)(A); 42 U.S.C. 405(g)

---

[5] Dr. Pukis and Blossomwood do not appear to contest that they filed impossible claims.  Doc. 15-56 at 7-16 (admitting claims submitted in error); Blossomwood's Request for Reconsideration of Revocation, Doc. 15-4 at 20 (admitting "a majority of the Disputed Claims were the result of CRNPs mistakenly billing for services under Dr. Pukis' provider number, during periods of time when he was abroad.")  To the extent they do contest this, the court finds the substantial evidence supports the factual finding that they submitted more than 100 impossible claims.  Dr. Pukis and Blossomwood conceded they submitted claims for Dr. Pukis's services when he was out of the country.  Docs. 15-56 at 7-16; 15-4 at 20; *Shah v. Azar*, 920 F.3d 987, 995 (5th Cir. 2019) (finding substantial evidence supports an ALJ's decision revoking billing privileges of suppliers who admitted to being out of the country at the time services were issued).

(incorporated by 42 U.S.C. § 1395ff(b)(1)(A)).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Dekalb Cnty. v. U.S. Dept. of Labor*, 812 F.3d 1015, 1020 (11th Cir. 2016) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Dr. Pukis and Blossomwood allege the absence of substantial evidence to support a factual finding that their conduct warrants the maximum three-year enrollment bar.  Doc. 27 at 12.  The court disagrees.

Debarrment against a supplier is warranted, "[i]f [they have] their billing privileges revoked . . . ."  42 C.F.R. § 424.535(c) (2015).  CMS must impose a re-enrollment bar that "lasts a minimum of 1 year, but not greater than 3 years, depending on the severity of the basis of the revocation."  42 C.F.R. § 424.535(c)(1) (2015).  Contrary to Dr. Pukis's and Blossomwood's contention that CMS did not "establish a factual justification . . . addressing the 'severity' of the claimed action[,]" doc. 27 at 12, CMS imposed the three-year enrollment bar after finding Dr. Pukis and Blossomwood submitted 115 claims "for services rendered . . . for periods of time when [Dr. Pukis] was out of the country."  Docs. 15-55 at 27-28 and 15-62 at 8-9.  This conduct is not in contention.  Indeed, Dr. Pukis and Blossomwood concede that they submitted at least 100 of these impossible claims.  Docs. 15-4 at 20 and 15-56 at 7-16.  While Dr. Pukis and Blossomwood may disagree, a reasonable mind might accept that over 100 claims for alleged services they provided while Dr. Pukis

was out of the country rises to the severity level that warrants the maximum re-enrollment bar. And, "where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy[,] the relation of remedy to policy is peculiarly a matter for administrative competence." *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185 (1973) (internal quotations omitted). Based on this record, the substantial evidence supports CMS's factual finding that the actions here warranted the maximum penalty.

### D.

Finally, the court must evaluate whether the DAB decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 377 (1998). The goal is to ensure that the agency's decision was "logical and rational." *Allentown Mack Sales & Serv., Inc.*, 522 U.S. at 374. The court "must give substantial deference to an agency's interpretation of its own regulations" allowing the interpretation "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (internal quotations omitted).

Dr. Pukis and Blossomwood assert multiple reasons that purportedly show the arbitrary and capricious or abuse of discretion nature of the decision: (1) the agency's interpretation of 42 C.F.R. § 424.535(a)(8)(i)(B) revoking supplier privileges for

three or more impossible billing claims, doc. 23 at 19; (2) the DAB purportedly ignored several mitigating factors, doc. 23 at 8; and (3) the imposition of the maximum three-year re-enrollment bar, doc. 27 at 11. These arguments are unavailing.

### i.

Section 424.535(a)(8)(i) states "The provider or supplier submits a claim or claims for services that could not have been furnished to a specific individual on the date of service . . . ." 42 C.F.R. § 424.535(a)(8)(i). The DAB interpreted this provision as applying when a supplier has submitted three impossible billing claims. The Plaintiffs challenge this interpretation. But, by its plain language, Section 424.535(a)(8)(i) only requires one impossible claim. Therefore, interpreting the regulation to only apply when a supplier has filed three or more impossible claims is reasonable. Moreover, the DAB has consistently applied this interpretation in other cases.[6] And, CMS stated this interpretation clearly when it implemented the regulation. 73 Fed. Reg. 36,455 (stating Medicare billing privileges would only be revoked if there were three or more impossible billing claims). Therefore, the court rejects Dr. Pukis's and Blossomwood's contentions that the decision to interpret the

---

[6] *See Howard B. Reife, D.P.M.*, D.A.B. No. 2527, 2013 WL 5310189, at \*5 (Aug. 1, 2013); *John M. Shimko*, D.P.M., D.A.B. No. 2689, 2016 WL 30308513, at 6 (Apr. 25, 2016); and *Louis J. Gaefke, D.P.M.*, D.A.B. No. 2554, 2013 WL 12200935, at 7 (Dec. 24, 2013).

provision as requiring three or more impossible claims is arbitrary, capricious, an abuse of discretion, or in violation of the regulation.

## ii.

Dr. Pukis and Blossomwood argue also that the DAB failed to consider certain allegedly mitigating factors. More specifically, they assert that the DAB failed to consider that the billing "errors were isolated and accidental" and "unlikely to prompt action from law enforcement . . . ." Doc. 23 at 25. Indeed, the DAB declined to do so, citing to a prior decision that explained "whether improper billing resulted from intentional fraud or accidental errors was immaterial." Doc. 15-3 at 18 (internal quotations omitted). While Dr. Pukis and Blossomwood obviously disagree, Section 434.535(a)(8)(i) does not include any language suggesting CMS should consider the supplier's intent, aside from the subsection heading: "Abuse of billing privileges." 42 C.F.R. § 434.535(a)(8)(2015). The DAB interpreted this subheading to only require proof of "wrong or improper use; misuse . . ." rather than consideration of intent. Doc. 15-3 at 19 (internal quotations omitted). The DAB's interpretation, which it has repeatedly applied in other cases,[7] is reasonable and is not arbitrary or capricious.

---

[7] *See supra* n. 6.

### iii.

The Plaintiffs also assert that the three-year ban is arbitrary and capricious. Section 424.535(c)(1) gives CMS the discretion to bar a supplier from enrolling in Medicare from one to three years "depending on the severity of the basis of the revocation."  42 C.F.R. § 424.535(c)(1) (2015).  Moreover, the regulation prohibits billing for services provided to a Medicare recipient when, as here, the biller is outside of the country.  42 C.F.R. 424.535(a)(8)(i) (2015); Docs. 15-55 at 27-28 and 15-62 at 8-9.  And, the regulation specifically authorized CMS to bar re-enrollment for one to three years.  42 C.F.R. § 424.535(c)(1) (2015).  CMS chose to implement a three-year bar after finding Dr. Pukis and Blossomwood had submitted over 100 claims in violation of the regulation.  Docs. 15-55 at 27-28 and 15-62 at 8-9.  CMS's determination that this conduct warranted the maximum three-year bar is reasonable. Therefore, because CMS's "decision to issue a penalty" is due deference as it was "specifically authorized by its regulations for conduct that the regulation made clear was prohibited," *Shah*, 920 F.3d at 999, n. 37 (internal quotations omitted), the court also rejects Dr. Pukis's and Blossomwood's contention that the imposition of the three-year enrollment ban was arbitrary or capricious.[8]

---

[8] Dr. Pukis and Blossomwood raise other contentions which are also unavailing. They claim "it is an abuse of discretion for CMS to revoke a supplier's Medicare enrollment based on such an inconsequential number of claims. . . ."  Doc. 23 at 22.  This assertion regarding inconsequentiality is inaccurate where, as here, CMS found over 100 impossible claims.  Doc. 15-55 at 27.

Dr. Pukis and Blossomwood also challenge the DAB's refusal to consider that the impossible claims were only for "a deminimus amount . . . ."  Doc. 23 at 22.  The interpretation that Section

## II.

Dr. Pukis and Blossomwood argue also that the interpretation of Section 424.535(a)(8)(i) to only require consideration of whether the supplier has submitted three impossible claims violates their Fifth Amendment[9] substantive due process right to participate in Medicare.[10]   Doc. 27 at 19-20.   The Fifth Amendment's protection "cover[s] a substantive sphere . . . barring certain government actions regardless of the fairness of the procedures used to implement them."  *Cnty. of Sacremento v. Lewis*, 523 U.S. 833, 840 (1998) (internal quotations omitted).  "To state a substantive due process claim, a plaintiff must allege (1) a deprivation of a constitutionally protected interest, and (2) that the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a

---

424.535(a)(8)(i) does not require consideration of the low dollar amount of these billing violations is reasonable.  The regulation mentions no financial threshold for finding a violation.  42 C.F.R. § 434.535(a)(8);  *Gaefke*, D.A.B. No. 2554, at 8; and *Shimko*, D.A.B. No. 2689, at 8.

[9] The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V.

[10] The Defendants assert this claim is not properly before this court. The court disagrees.  The DAB made the decision to revoke the Plaintiffs' Medicare billing privileges final and affirmed the basis for the revocation—that Dr. Pukis and Blossomwood had submitted over three impossible claims.  DAB Final Decision, Doc. 15-3 at 18 – 21; *In re. Beverly Health & Rehab.- Spring Hill*, D.A.B. No. 1696, 1999 WL 482433, at *4 (July 1, 1999) ("The Board acts for the Secretary in the hearing process by issuing the final agency decisions in appeals.").  The DAB also affirmed the ALJ's refusal to consider evidence allegedly mitigating the impossible claims as outside the scope of review.  Doc. 15-3 at 17-23.  Dr. Pukis and Blossomwood contend this affirmance, finding several allegedly mitigating factors irrelevant to the legal analysis, violated their substantive due process rights.  Doc. 27 at 20.  And Dr. Pukis and Blossomwood could not have raised this claim until the DAB issued its Final Decision.  Therefore, the Plaintiffs have not waived this claim.

constitutional violation." *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) (internal quotations omitted).   Finally, "[a] deprivation is of constitutional stature if it is undertaken for improper motive and by means that were pretextual, arbitrary and capricious, and without rational basis." *Id.* (quoting *Executive 100, Inc. v. Martin Cnty.*, 922 F.2d 1536, 1541 (11th Cir. 1991)).

Assuming, without deciding, that Dr. Pukis and Blossomwood have a constitutionally protected property interest in participating in Medicare, the application of the DAB's interpretation of the regulation does not amount to a constitutional violation.  For the reasons stated above, the DAB's interpretation that Section 424.535(a)(8)(i) does not require consideration of any factor other than whether the supplier made three impossible claims is not "arbitrary and capricious." This interpretation has a conceivable rational relation to CMS's legitimate interest in "ensur[ing] that Medicare billing privileges are given to trustworthy providers and suppliers[,]" and "help[ing] protect the Medicare Trust Funds, and beneficiaries from potentially unqualified providers and suppliers."  73 Fed. Reg. 36,448, 36,454. Finally, Dr. Pukis and Blossomwood have not alleged that the DAB's decision was pretextual.

## III.

Based on the foregoing, substantial evidence supports the DAB Final Decision. And the decision comports with the relevant legal standards and is not arbitrary,

capricious, or an abuse of discretion.  Therefore, the decision is due to be affirmed, and the Defendants' motion for judgment is due to be granted. A separate order in accordance with this memorandum of decision will be issued.

**DONE** the 21st day of September, 2020.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE